24CA0508 Peo v Meza 07-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0508
City and County of Denver District Court No. 11CR3694
Honorable A. Bruce Jones, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Luis Alfonso Meza,

Defendant-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE FREYRE
Johnson and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 30, 2026

---

Philip J. Weiser, Attorney General, William Kozeliski, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Tara Jorfald, Alternate Defense Counsel, Lakewood, Colorado, for Defendant-Appellant

¶ 1    Defendant, Luis Alfonso Meza, appeals the postconviction court's order denying his Crim. P. 35(c) motion alleging that his trial counsel's concurrent representation of a potential witness created a conflict that deprived him of effective assistance of counsel. We affirm.

I.    Background

¶ 2    In 2013, Meza was tried for three separate incidents, the last of which resulted in a first degree murder charge based on a shooting that occurred outside a Denver-area bar. According to the prosecution's evidence at the trial, Meza shot and killed the victim, Patricio Archuleta, someone who was known to be affiliated with Meza in a drug distribution enterprise. The victim was shot in the back and was unarmed when the shooting occurred. Meza fled the scene but was arrested shortly thereafter following a police chase. The gun used in the shooting was found in Meza's truck and traces of DNA from multiple people, including Meza, were found on the gun. Several witnesses who observed the events in the parking lot of the bar identified Meza as the shooter; although one witness testified that someone from the backseat of the truck fired the shots.

¶ 3    While representing Meza, Meza's trial counsel concurrently represented Reyna Mendoza on federal drug charges. Mendoza, Meza, the victim, and another man, Ricky Cisneros, were connected in the drug distribution enterprise. Mendoza was also allegedly involved in simultaneous romantic relationships with the victim and Cisneros.

¶ 4    A jury found Meza guilty of one count each of first degree murder after deliberation, vehicular eluding, possession of a schedule II controlled substance, first degree assault, and illegal discharge of a firearm. The trial court sentenced Meza to (1) life in prison without parole on the first degree murder conviction; (2) consecutive prison sentences for the vehicular eluding, first degree assault, and illegal discharge of a firearm convictions; and (3) a concurrent prison sentence for the possession of a controlled substance conviction.

¶ 5    On direct appeal, a division of this court reversed the first degree assault conviction and affirmed the remaining convictions. *See People v. Meza*, (Colo. App. No. 14CA0930, September 29, 2016) (not published pursuant to C.A.R. 35(e)).

¶ 6    In 2020, Meza timely filed a Crim. P. 35(c) postconviction motion through appointed counsel alleging various claims of ineffective assistance of trial counsel, including a claim that trial counsel labored under a conflict of interest because of his concurrent representation of Mendoza. At the start of the two-day evidentiary hearing on the postconviction motion, postconviction counsel withdrew all ineffective assistance of counsel claims except for the claim that trial counsel labored under a conflict of interest by representing both Meza and Mendoza. Meza argued that trial counsel should have named Cisneros as an alternate suspect, or, alternatively, should have pursued self-defense as a stand-alone defense and that trial counsel's failure to pursue those defenses was linked to the conflict.

¶ 7    After the parties filed supplemental written closing arguments, the postconviction court denied Meza's motion finding that (1) with regard to the self-defense theory, there was not an actual conflict created by trial counsel's concurrent representation of Meza and Mendoza and, nevertheless, Meza failed to establish that the conflict adversely affected the representation; and (2) with respect to the

alternate suspect defense focused solely on Cisneros, that was not a plausible alternative strategy that trial counsel failed to pursue.

## II. Discussion

¶ 8 Meza contends that the postconviction court erred by denying his postconviction motion. We disagree.

### A. Standard of Review and Applicable Law

¶ 9 In a Crim. P. 35(c) proceeding, the postconviction court, as the trier of fact, determines the weight and credibility of witness testimony. *West v. People*, 2015 CO 5, ¶ 11. Thus, we defer to a postconviction court's findings of fact, if they are supported by the evidence, but review its legal conclusions de novo. *Id.*

¶ 10 A criminal defendant has a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). This right encompasses a right to conflict-free representation. *West*, ¶ 15.

¶ 11 When seeking postconviction relief based on ineffective assistance of counsel resulting from an attorney's alleged conflict of interest, a "defendant must show by a preponderance of the evidence both a conflict of interest and an adverse effect resulting from that conflict." *West*, ¶ 65.

¶ 12    Ineffective assistance of counsel premised on a conflict of interest encompasses situations where counsel's concurrent representation of the defendant and a witness created "a situation inherently conducive to and productive of divided loyalties."  *West,* ¶ 26 (citation omitted).  An actual conflict is one that adversely affected counsel's performance.  *Mickens v. Taylor,* 535 U.S. 162, 172 n.5 (2002).

¶ 13    To show an adverse effect from the conflict, "a defendant must (1) identify a plausible alternative defense strategy or tactic that trial counsel could have pursued, (2) show that the alternative strategy or tactic was objectively reasonable under the facts known to counsel at the time of the strategic decision, and (3) establish that counsel's failure to pursue the strategy or tactic was linked to the actual conflict."  *West,* ¶ 65.

¶ 14    The existence of a plausible alternative strategy "requires record evidence that clearly indicates counsel possessed sufficient information to merit considering an alternative strategy or tactic."  *Id.* at 58.  "[T]his inquiry requires the defendant to identify unpursued strategies and tactics that were obviously in the defendant's interest under the circumstances."  *Id.*

5

¶ 15    Once the defendant identifies a plausible alternative that counsel might have pursued, he must then "show that the alternative was objectively reasonable under the facts known to counsel at the time of the strategic decision." *Id.* at ¶ 59. Finally, to establish that counsel's failure to pursue the alternative strategy or tactic was linked to the actual conflict, a defendant must show either that (1) the alternative strategy or tactic was inherently in conflict with the attorney's other loyalties or interests, or (2) the alternative strategy or tactic was not pursued because of those other loyalties or interests. *Id.* at ¶ 61 (citation omitted).

## B.    Trial Proceedings

¶ 16    At the pre-trial readiness conference, trial counsel told the court that he had recently learned that Cisneros had sent text messages to Mendoza about planning to kill the victim and that Mendoza had told federal investigators that Cisneros had also called her multiple times and threatened to kill both her and the victim. Trial counsel told the court that, although he was also representing Mendoza in federal court, he did not believe there was a conflict of interest and that he had consulted a conflict counsel who also believed that there was no conflict because Meza was not part of the

6

federal drug conspiracy case in which Cisneros and Mendoza were involved.

¶ 17 Trial counsel told the court that he intended to endorse Mendoza as a witness in Meza's case to testify about the text messages. Counsel then requested a continuance because securing Mendoza as a witness could take additional time, as she was in federal custody. The trial court noted that (1) it did not believe trial counsel had an active conflict of interest; (2) the contents of the text messages were corroborative of any allegation that Cisneros may be an alternate suspect; and (3) trial counsel reasonably had not discovered this information earlier because of the volume of discovery in Mendoza's federal case. Nevertheless, the court denied the motion to continue the trial.

¶ 18 During the trial, although trial counsel obtained a writ to have Medoza appear to testify as part of the defense's case, federal authorities did not honor that writ. In lieu of Mendoza's testimony, the prosecution stipulated to the admission of a relevant text message from Cisneros to Mendoza in which Cisneros threatened to kill the victim. The content of that text message was admitted during a police detective's testimony.

¶ 19 Ultimately, trial counsel presented a general denial defense to the jury, largely arguing that the prosecution had not proven Meza's guilt for the murder beyond a reasonable doubt. In support of that theory, trial counsel posited that someone other than Meza killed the victim based on (1) the existence of DNA evidence from multiple people on the gun; (2) one witness's testimony that another person fired the shots from the back of Meza's truck; and (3) the text message from Cisneros to Mendoza in which Cisneros threatened to kill the victim.

¶ 20 In addition, after the prosecution's rebuttal witness raised the issue of self-defense by testifying that the victim always carried a gun and had previously shot at Meza, trial counsel requested and received a self-defense instruction.

### C. Postconviction Proceeding

¶ 21 As relevant here, the two-day postconviction hearing included testimony from trial counsel and a witness qualified as an expert in criminal defense.

¶ 22 Trial counsel testified that, after discussing the murder case with Mendoza, he was convinced that he did not have a conflict by concurrently representing Meza and Mendoza because Mendoza did

not have any personal knowledge about the murder and was not in the state when it occurred. Trial counsel also testified that he did not believe the overall evidence supported a claim that Cisneros, specifically, was the alternate suspect and he did not want to pursue a defense premised on self-defense because that would require him to admit that Meza shot the victim.

¶ 23 The criminal defense expert testified that trial counsel should have pursued a defense based on either Cisneros being the alternate suspect or self-defense, but not both. In assessing both potential theories, she opined that self-defense was the stronger of those two theories. Further, she testified that trial counsel's concurrent representation of Meza and Mendoza created a conflict because trial counsel would not be able to use any information he gained from representing Mendoza in his defense of Meza and it was that conflict that prevented him from properly presenting either of those defenses. The expert's testimony focused on how Mendoza was involved in romantic relationships with Cisneros and the victim, but the expert did not identify any specific confidential information that trial counsel may have learned from Mendoza that could have been used in Meza's murder trial.

9

### D. Postconviction Court's Order

¶ 24    In addressing Meza's postconviction claim that trial counsel should have pursued self-defense as a stand-alone defense, the postconviction court found that there was not an inherent conflict of interest with trial counsel's concurrent representation of Meza and Mendoza.  Specifically, the court found that (1) Mendoza was not an adverse witness, as was the situation in *West*, but instead a potential defense witness; (2) there was not a direct link between her federal case and Meza's case; and (3) there was not any evidence that Mendoza was involved in the murder such that her testimony might implicate her in that crime.  The court rejected postconviction counsel's arguments hypothesizing why trial counsel's failure to pursue that defense might be related to the concurrent representation and found that those suggested reasons were contradicted by trial counsel's efforts to writ Mendoza in for the trial and were largely speculative.

¶ 25    The postconviction court, nevertheless, also analyzed the second part of the *West* test — that is, whether there was a plausible alternative defense strategy that counsel could have pursued that was objectively reasonable and counsel's failure to

10

pursue that strategy was linked to the actual conflict. *See id.* at ¶ 57. The court found that self-defense was a plausible alternate strategy or tactic that counsel failed to pursue and noted that, although trial counsel alluded to self-defense during the trial and successfully obtained a self-defense jury instruction, self-defense was essentially an afterthought in the defense and counsel's approach differed from how it would have been presented if self-defense was the stand-alone defense. The court also found that this defense was objectively reasonable.

¶ 26 However, in rejecting Meza's argument that counsel's conflict of interest prevented counsel from pursing self-defense, the court found that Meza had not (1) demonstrated that the trial counsel's failure to have Mendoza testify for Meza was due to the loyalties he owed to Mendoza; or (2) otherwise explained how trial counsel's strategic decision to pursue self-defense within a larger burden of proof argument, rather than as a stand-alone defense, was linked to the concurrent representation.

¶ 27 In rejecting Meza's contention that trial counsel's concurrent representation created an actual conflict of interest that affected counsel's presentation of an alternate suspect defense focused

solely on Cisneros, the postconviction court seemed to assume that a conflict existed — step one of the *West* analysis — and it addressed only whether the conflict adversely affected the representation. Specifically, the postconviction court analyzed whether the alleged alternate defense strategy of identifying Cisneros as the alternate suspect was a plausible alternate strategy that counsel failed to pursue.

¶ 28 In doing so, the court found that (1) while trial counsel may not have listed Cisneros as the alternate suspect in a pre-trial pleading, he suggested as much on multiple occasions during the trial; and (2) trial counsel attempted to writ Mendoza as a witness to support the defense, but he ultimately introduced text messages to her that implicated Cisneros as wanting to kill the victim. Accordingly, the postconviction court concluded that the alternate suspect defense focused on Cisneros was not a plausible alternate strategy or tactic that trial counsel failed to pursue.

## E. Analysis

¶ 29 Although *West* involved a situation where defense counsel's office had previously represented a witness who testified against the defendant, the parties do not contend that the analysis in *West* is

12

inapplicable to the situation here, where counsel concurrently represented a witness who might have testified on behalf of the defendant. Thus, for purposes of this analysis, we assume without deciding that *West*'s articulation of the test for determining whether trial counsel's conflict of interest warrants reversal of a defendant's conviction applies to trial counsel's concurrent representation of Meza and Mendoza.

¶ 30    We perceive no error in the postconviction court's order denying Meza's motion, for three reasons.

¶ 31    First, the record supports the postconviction court's finding that there was no conflict of interest stemming from trial counsel's concurrent representation as it related to the self-defense claim. No evidence was presented that trial counsel obtained confidential information from Mendoza that influenced his decision to not pursue self-defense as a stand-alone defense. Further, counsel's unsuccessful attempt to have Mendoza testify belies the claim that his representation of Meza was adversely affected by his representation of Mendoza.

¶ 32    Second, as the postconviction court found, Mendoza had no direct knowledge of the shooting and was not in the state when the

13

murder occurred. Therefore, any evidence she could have provided to support self-defense, namely that the victim was a violent person who always carried a gun, was cumulative of other evidence admitted through the prosecution's rebuttal witness. Accordingly, the postconviction court did not err in concluding that there was no conflict regarding the presentation of the self-defense claim.

¶ 33 Third, in denying Meza's alternative claim that trial counsel's conflict of interest impaired his ability to present an alternate suspect defense naming Cisneros as the alternate suspect, the postconviction court did not address whether the concurrent representation created a conflict with respect to the alternate suspect defense. Thus, we assume, without deciding, that such a conflict existed.

¶ 34 Turning to the second part of the *West* analysis, we agree with the postconviction court that Meza failed to establish that the conflict adversely affected the representation as it related to the alternate suspect defense. In analyzing whether there was an adverse effect from the conflict, the first step is to identify a plausible alternative defense strategy counsel did not pursue. *See id.*

¶ 35 The record supports the postconviction court's finding that counsel *did* pursue an alternate suspect defense at trial by admitting the text message that Cisneros sent to Mendoza threatening to kill the victim. And, although counsel did not identify Cisneros in pre-trial pleadings as the alternate suspect, Cisneros was identified as the alternate suspect when the text message was introduced. Because trial counsel pursued an alternate suspect defense, just not in the way that Meza now argues he should have, we perceive no error in the postconviction court's rejection of Meza's alternate suspect claim.

### III. Ineffective Assistance under *Strickland*

¶ 36 To the extent Meza argues on appeal that trial counsel provided ineffective assistance because he pursued a hybrid defense rather than one based solely on either self-defense or Cisneros as the alternate suspect, we decline to address that argument because Meza expressly abandoned that ineffective assistance of counsel claim by choosing not to pursue it at the postconviction hearing. *See People v. Smith*, 2024 CO 3, ¶¶ 19-20 (claims raised in postconviction motion but not reasserted in the hearing on that motion are deemed abandoned); *see also People v. Rodriguez*, 914

15

P.2d 230, 249 (Colo. 1996) (concluding that the defendant's failure to reassert on appeal all of the claims on which the district court had ruled constituted a conscious relinquishment of those claims).

## IV. Disposition

¶ 37    The order is affirmed.

JUDGE JOHNSON and JUDGE KUHN concur.